Holmes, J.,
dissenting. Although I am in agreement with the law as stated in the syllabus of this opinion, I respectfully dissent because of the majority’s failure to properly apply the law to the facts of the instant appeal.
As correctly stated at the outset of the majority’s opinion, the crucial issue for our discussion is whether appellant was subjected to “interrogation” within the meaning of Rhode Island v. Innis (1980), 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297. There, the United States Supreme Court construed “interrogation” more broadly than meaning police questioning of the suspect. The Fifth Amendment privilege against compulsory self-incrimination could not adequately be safeguarded unless law enforcement officials were also prohibited from conduct which amounted to the “functional equivalent” of express questioning. Accordingly, the court held: “[T]he definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response.” (Emphasis sic.) Id. at 302, 100 S.Ct. at 1690, 64 L.Ed.2d at 308.
The Innis court, in finding that no interrogation took place, rejected any definition of “interrogation” which focused exclusively on the existence of police compulsion, however subtle it may have been.[2] However, the suspect’s response must, in addition, have been “the product of words or actions on the part of the police that they should have known were reasonably likely to elicit an incriminating response.” Id. at 303, 100 S.Ct. at 1691, 64 L.Ed.2d at 309. If the suspect’s statements were not evoked as a result of police compulsion, then the second prong of the definition of “interrogation” has not been satisfied. In other words, we must look to the reasonable perceptions of the suspect in determining whether he or she was subjected to “interrogation.” If a suspect would reasonably feel that the police conduct or words did not call for a response, no interrogation can be said to have taken place.
I am confused and troubled that the majority has chosen to characterize the statement “We wanted to talk to you about Bobby Bennett” as an interrogation. This statement was not a question, nor can it be considered to be the *499 functional equivalent of express questioning. Nothing in this remark could have been reasonably perceived by appellant (a forty-two-year-old former deputy sheriff) as calling for a response, let alone a waiver of Miranda rights and the initiation of his subsequent conversation. Moreover, there is ample evidence in the record which strongly suggests that appellant welcomed this comment as an opportunity to mislead the police investigation through his deceptive theories on who shot the victim. Appellant’s subsequent incriminating remarks were more likely evoked by his desire to lead the police astray than they were by his perception that the officer wanted him to speak. In this sense, the comment did strike a “responsive chord,” thereby permitting appellant to say what he wanted about his version of the Bennett murder.
What the majority characterizes as a “bright-line rule” emanating from Innis and its progeny is, in effect, the inevitable result of the majority’s misapplication of the nuances of the constitutional privilege against compulsory self-incrimination. The majority goes far beyond safeguarding this privilege by unnecessarily crafting what amounts to an anticommunication obligation on the part of police officers. By this reasoning, any communication other than that usually attendant to arrest and custody will amount to “interrogation.” Also, by this reasoning, the forseeability of the incriminating response is irrelevant — what matters is only that the arrestee began to talk.
Accordingly, I would affirm the court of appeals.

. See Innis at 303, 100 S.Ct. at 1691, 64 L.Ed.2d at 309:
“The Rhode Island Supreme Court erred, in short, in equating ‘subtle compulsion’ with interrogation. That the officers’ comments struck a responsive chord is readily apparent. Thus, it may be said, as the Rhode Island Supreme Court did say, that the respondent was subjected to ‘subtle compulsion.’ But that is not the end of the inquiry. It must also be established that a suspect’s incriminating response was the product of words or actions on the part of the police that they should have known were reasonably likely to elicit an incriminating response. This was not established in the present case.” (Emphasis added.)